Garcia and we will hear from the appellant first. Good afternoon your honors, may it please the court. Daniel Scott Harawa on behalf of the appellant Alejandro Salinas Garcia. It is my honor and pleasure to introduce Sarah Hibachi and Corbin Keller, third-year law students at Washington University in St. Louis, who will be arguing the case under my supervision. All right. Good afternoon, may it please the court. My name is Sarah Hibachi and I'm appearing on behalf of our client Alejandro Salinas Garcia. We urge the court to find that since Mr. Garcia was not given the benefit of the fair sentencing act, that he should be afforded the right to re-sentence through the First Death Act. There are three prongs as it relates to eligibility under the First Death Act. Two of the three prongs can be disposed of because the government has conceded that Mr. Garcia needs to be remarked. The first is that Mr. Garcia's offense is a common offense under section 404 of the First Death Act, which the government conceded in their reply brief and we agree with them. The second is that Mr. Garcia's offense was committed before August 3rd, 2010, which from the record is obviously true. The main issue and contention in this case is regarding the last prong, which is whether Mr. Garcia received the benefit of a fair sentencing act, which means that he received that during sentencing there was some type of contemplation or thought about the FSA. We argue that he was not given the benefit of the FSA because the record is silent on the FSA and United States v. ORC. First, the district court erred by only looking at the date of sentencing to assume that Mr. Garcia had the benefit of the FSA. Second, the sentencing judge did not give clear and robust reasoning when sentencing Mr. Garcia, leading us to analyze the silence in the record. Third, Mr. Garcia's PSR was never updated and reflected to the substantial change of law from the Supreme Court, which is United States v. ORC, where the Supreme Court found that defendants indicted before the FSA was enacted still get the benefit of the FSA. Because of these reasons, it's evident that Mr. Garcia's PSR was never updated and reflected to the substantial change of law from the Supreme Court, which is United States v. ORC, where the Supreme Court found that defendants indicted before the FSA was enacted still get the benefit of the FSA. I was wondering whether you've seen any cases where a court has held that a defendant was not sentenced in accordance with the FSA, I was wondering whether you've seen any cases where a court has held that a defendant was not sentenced in accordance with the FSA, when the defendant was sentenced after Dorsey, or in our circuit, I guess, after Dorsey and Muzone, which recognized Dorsey's effect? Yes, Your Honor. So, a case that's directly on point, which is United States v. Joseph, which we submitted a 28-page letter about. And in United States v. Joseph, what happened was Joseph was sentenced after Dorsey, And in United States v. Joseph, what happened was Joseph was sentenced after Dorsey, and at the sentencing hearing, his counsel actually referenced the Fair Sentencing Act. And later, the Eleventh Circuit found that even though he referenced the Fair Sentencing Act, it was clear to the record that he was not given the benefit. But I guess the difference there, right, is that it was after Dorsey, and I take your word for that, I don't recall, But I guess the difference there, right, is that it was after Dorsey, and I take your word for that, I don't recall, but it was before the Eleventh Circuit recognized the change in its precedent. And here, this is after both of those, right? It's after Dorsey and after Muzzone. And here, this is after both of those, right? It's after Dorsey and after Muzzone. So, Your Honor, actually, the Fourth Circuit, so the case that we were in, the case that we believe was when the Fourth Circuit aggregated Bullard, United States v. Bullard, which was originally the precedent, was United States v. Allen, which was actually decided in 2013 after Mr. Garcia was sentenced. But we actually recognized it earlier. We recognized it in Muzzone, which was in, let's see, July 2012, But we actually recognized it earlier. We recognized it in Muzzone, which was in, let's see, July 2012, which was before he was sentenced. And I think in the Eleventh Circuit case, the defendant was sentenced before Dorsey, according to my notes. So, are you aware of any other case where a defendant was sentenced after Dorsey and it was found to not be in accordance with the FSA? Your Honor, there are a few cases. I don't have them in front of me for some odd reason, but there are definitely a few cases where that occurred. And just to kind of go back about Muzzone, I apologize if I'm pronouncing that incorrectly, but even if, well, of course, Mr. Garcia was sentenced after Muzzone, however, there's still nothing in the record that shows that Muzzone or Dorsey was considered when he was sentenced. however, there's still nothing in the record that shows that Muzzone or Dorsey was considered when he was sentenced. So, this court decided just a few months ago in United States v. Paulington that whenever there's sentencing issues, there should be some robust reasoning and robust explanation. There is nothing of the sort in Mr. Garcia's case. You know, the sentencing judge said that for all purposes of sentencing, he would be using a PSR, You know, the sentencing judge said that for all purposes of sentencing, he would be using a PSR, which we argued the PSR was incorrect to begin with. There was no point in the statement that the PSR was correct. And just to have a little bit of more affirmative evidence that the PSR was incorrect, Mr. Garcia was sentenced under 841B1 subpart A. However, he was actually indeed sentenced in accordance with the FSA, he would have been sentenced under 841B1A AND 841B1B. So the lack of a second charge shows that the FSA was not- Well, that in combination with the silence on the record- shows the FSA was not thought of at the time when the PSR was finalized, at the time of sentencing. And obviously that means that Mr. Garcia should be eligible for First Step Act resentencing hearing because of that. So I think you said, got the benefit of the Fair Sentencing Act. Do you really mean that or do you mean in accordance with the Fair Sentence Act? Which seems to be the focal issue in this case. Certainly, Dorsey was out. Certainly the Fair Sentencing Act was in place. The issue we now confront, is there something to indicate he was sentenced in accordance with it, in light of the fact that one can commit a crime before it and sentenced after it, before the Dorsey case and after the Dorsey case. So from that perspective, what does the term in accordance with, how does that relate to this case? Yes, Your Honor, if I'm understanding your question correctly, so we argue that a defendant who is sentenced according to the Fair Sentencing Act, or even received the benefit of the Fair Sentencing Act, is A, they would have both whatever statutes are offered to them. So in our case, 841B1B would have been added to the PSR. And another thing would be that we would expect some type of reference to the Fair Sentencing Act. Again, it's completely... But my question is, he does not need to receive the benefit of the act. What he needs is to be sentenced in accordance with it. So he may not get the benefit of it, but if he's sentenced in accordance with it, it's a different term and it also relates to why it's important in this particular case, at least from what I understand your argument to be, that an individual who is sentenced after Dorsey, we still have the obligation to determine if he was sentenced in accordance with the act. Yes, Your Honor. So we don't believe that he was sentenced in accordance to the act as well. So we don't think he got a benefit and he wasn't sentenced in accordance to the act. And you know, the First Step Act is remedial statute. And what's your best evidence that he wasn't sentenced in accordance with the act? So our best piece of affirmative evidence is the PSR. So in the PSR, like I said before, he was sentenced under Section 841B1A only and not Subpart B. And if you look at his co-defendants who had essentially the same exact drug charges, their PSR had A, Subpart A, and B. So it goes to show that there is some type of confusion at this time within the district. So, you know, there was some little case law. The FSA was pretty new at this time. And, you know, unfortunately, they just didn't get it right. And since they didn't get it right, the First Step Act, which is what Congress intended to fill the gaps left by the Fair Sentencing Act, which this court decided just a week ago in U.S. v. Nicholson, that he should be eligible for a resentencing under the First Step Act. Additionally, going back to what the First Step Act really means here, this is Mr. Garcia's last shot. He didn't get the benefit of the Fair Sentencing Act. We don't believe that he was sentenced in accordance with it either based off of the lack of the charge in the PSR. And Congress intended for defendants just like Mr. Garcia to have another shot with the First Step Act. Again, the First Step Act in U.S. v. Wersing, which this court decided, is a remedial statute. And U.S. v. Nicholson, again, just decided a week ago, this court said that the First Step Act is left to fix the gaps left in the original sentence in the marks of intervening circumstances. We believe that intervening circumstances is the case law that has come out from 2012 when Mr. Garcia was sentenced until now that shows that the law was a little bit muddled and now it's working. Additionally, just to bring up a little bit of what could be thought of during this case, we believe that the practical reason that Mr. Garcia should be—the practical reason that Mr. Garcia— we're just talking about a very discreet—I'll just keep going—a very discreet amount of time, right? We're talking about 2012—well, June 2012 when Wersing was decided to 2013 when Allen was decided. There is not—this isn't an open and flooding case of relitigation. There is maybe a handful, maybe two, of defendants who are in this muddled case law where judges may not have known exactly what was going on, where they called him Bullard, where they called him Dorsey, and especially that we argue since there was no mention of it at all in the records. Can I ask a question on that point about being a mention of the Fair Sentencing Act? What if—and this is a hypothetical, it's not our case—but what if at the sentencing, someone mentioned the Fair Sentencing Act and the judge said, I'm aware of the Fair Sentencing Act, but it doesn't change anything in this case. And then everything else was the same, you know, the same everything else. Would that—would he then have been sentenced in accordance with the Fair Sentencing Act because the judge acknowledged he was aware of it, but it didn't change the ultimate range because Powder set the range? Would your answer to the in accordance question be different then? Your Honor, I think in that hypothetical, I would say maybe, right? So, because the FSA was discussed, maybe there's a chance even though, you know, the PSR, so you said that was the only change. Now, if the PSR still is incorrect, I think that there is still some leeway there. But I think in that case, it would be a stronger explanation or a stronger defense that the judge did think about it, and it was kind of in accordance. But again— So, if the judge mentioned it and said it doesn't change anything, that could be in accordance with the Fair Sentencing Act. But if the judge doesn't mention it, even though it doesn't change anything, it wouldn't be in accordance. Oh, no, Your Honor. I apologize. I misunderstood your question. No, that would not be in accordance. If this court decided in the United States to be bravado, even if it didn't change anything, that does not affect the eligibility of—oh, sorry, it's the Fair Sentencing Act. Yeah. I don't believe that it would still be in accordance because, again, the PSR would not have been corrected. So, if the judge said, I'm aware of the Fair Sentencing Act, but it doesn't change the sentencing range here because, you know, powder cocaine sets the range, that would still not be in accordance with the Fair Sentencing Act? We don't believe so, Your Honor, because the Fair Sentencing Act is to explain— If the defendant, in your hypothetical, had crack cocaine, even if the range would be the same, they should get the benefit of the Fair Sentencing Act. When we think about anchoring, sometimes—this court, that's U.S. v. Woodson—sometimes, depending on how many sentences are in front of them and what the mandatory minimums and maximums are, judges sometimes decide where the sentencing lies. Everything needs to be in front of the judge, so I do not believe that if the judge just said, oh, I'm not going to change it because it wouldn't—I'm not going to talk about the FSA because it's not going to change anything, that would still be incorrect. Everything needs to be in front of the judge, and the judge doesn't need to clear that because of those reasons. Additionally, I just wanted to point out really quickly, the PSR was incorrect, but also the judgment, which is on Joint Appendix 76, does not only have 841b1a. So, just to further give evidence that it's not just the PSR that was incorrect, the judgment would be correct as well. What was the JA site for the judgment? JA-76. Thank you. So, because of those reasons, we believe that Mr. Garcia is eligible under the First Step Act. Again, we're not talking about the merits of how long he's supposed to be sentenced. This is just about the fact that the district court erred when they said that he was not eligible. So, we believe that he is eligible under the First Step Act, and we ask for the court's remand. Thank you, counsel. We'll hear from government's counsel. May it please the court. Amy Ray for the United States. Your Honors, the district court properly denied Mr. Garcia's motion for a reduction of sentence because Mr. Garcia was sentenced approximately six months after the Supreme Court made it clear that defendants like him would be subject to the Fair Sentencing Act, and there's nothing in the record to suggest that the district court did not follow Dorsey's directive. But there's nothing in the record to suggest that the district court did recognize even that the Fair Sentencing Act was applicable. So, we're left to read the district court's mind and just assume that the district court considered it correctly. Go ahead. So, Judge Thacker, I think that's not correct, with all due respect. I think a couple of things. First of all, we don't presume a district judge doesn't follow Supreme Court law, and we don't ask the district court to say on the record that it's following the law that's in effect at the time. Dewey, what about the pre-sentence report? Shouldn't the pre-sentence report have been amended to correctly acknowledge that the Fair Sentencing Act was in play here? No, Your Honor, because the Fair Sentencing Act made absolutely no difference to the statutory range that Mr. Garcia was subject to. So, Mr. Garcia was... So, no pre-sentencing... Go ahead. Well, Mr. Garcia was sentenced in accordance with the Fair Sentencing Act. The Fair Sentencing Act... How do we know? Because he was subject to a statutory range of 10 years to life based on the powder cocaine, the quantity of powder cocaine that he admitted he was involved in his offense. And it is absolutely ordinary for a pre-sentence report when a defendant is convicted of a conspiracy offense that involves two drug amounts, for that pre-sentence report only to list the highest level, the statutory range that's actually going to govern the district court's sentencing decision. So, in this case, the range that governed that decision under the Fair Sentencing Act was 10 years to life, and that's why the pre-sentence report was not amended. The only thing, the pre-sentence report could have possibly... And what is the most analogous case to the argument that you're making? There is no case that I'm aware of that holds that a district court did not apply Dorsey after Dorsey. So, and one thing that I will say, and this is obviously not something that I can cite to, but what I would say is this, for those of us who were litigating these issues in 2010 through 2011, every judge who sentenced defendants in drug cases was waiting for Dorsey. The government had to decide what position to take. We ultimately litigated it. We won that issue in Buller, and we lost it in Dorsey. And we knew that as soon as Dorsey, there was a petition for certiorari. We were all paying attention, the district judges, the defendants' attorneys, and the U.S. attorneys, assistant U.S. attorneys like me who were getting ready to have to handle hundreds of motions. Then it really seems like it would have been mentioned. No, Your Honor, it wouldn't have been. Six months later, Dorsey was done. There was no reason to mention it. So, if we were dealing with a case in which you had worked in and probably would be confronting this issue, you mentioned the PRSR here, and as I recall, it seems like the subsection for cocaine base was a bit off. What was the problem there? I'm sorry, Your Honor. I'm not sure what Your Honor is referring to. The judgment didn't refer to the correct subsection for the cocaine base. It wouldn't need to because the cocaine base wasn't an issue in this case. He didn't admit to the cocaine base. So, the judgment refers to that. So, you don't think it should have at all? You don't think it should have referred to it at all? No, Your Honor. It didn't make any difference whatsoever. There was no reason for that judgment or the pre-sentence report. The only thing that referred to cocaine base was the indictment. Once Mr. Garcia pled guilty and admitted that he was responsible for at least five kilograms of powdered cocaine, that took, for all intents and purposes, the crack cocaine out. Now, there was a marijuana equivalency that was determined in this case through the pre-sentence report in terms of the guideline application because you had powder and crack, and as I recall, you had a small amount of marijuana. But what you have in the judgment is the appropriate designation, which is that he was convicted and sentenced under Section 841B1A. So, the judgment does mention the cocaine base, is what you're saying? No, I'm not saying that, Your Honor. I don't recall. Does it? I can take a look at it. Take a look at it because I think the judgment specifically says it. It says, conspiracy to distribute and possess with intent to distribute cocaine and cocaine base. It probably does. Sorry, I apologize, Your Honor. It probably says that. At J76. Yes, I know. Thank you, Judge Baxter. I appreciate that. Right. So, I want to go back to your general statement in terms that it seems that you were saying, as Judge Bell said, well, that was the law. You've got to presume that's the case. Well, the law is the law, and nearly all cases in courts make errors, and that's the problem we have here. You don't maintain that even after Dorsey, a court could make an error with regard to not sentencing under this, do you? No, Your Honor, but I would respectfully suggest that to my knowledge. We are dealing with a situation in which we're simply looking at the fact alone. We're not saying that he wasn't, but there's nothing here to indicate, in fact, he was. Your Honor, this court would have to presume that the district court made a legal error six months after the Supreme Court decided. No, that's not the case. We don't presume errors. Errors occur because we don't have evidence to support that anything was done in compliance with the law or something was not done as it should be done. I mean, we presume that everybody's going to follow the law, and if we had that presumption, why would we even have appeals on most of these cases? We start out and say, we're just going to presume you follow the law, and that's the end of it. That's not the case we're having here. We're looking at the facts, and we know that based upon the timing of this situation right here, that it doesn't take much to simply make an inquiry beyond the fact of, well, that's the law. That's the end of it. Your Honor, there was no dispute of fact in this case. There's nothing on this record that suggests Mr. Garcia didn't get the benefit of the act, and I note that if Mr. Garcia thought the Fair Sentencing Act had not been applied, he had a direct appeal and a motion to vacate, that he could have asked this court, he could have corrected it if he thought it was wrong. There's nothing on this record. There is no dispute of fact. There is no fact for the district court to find here. So tell me again about this judgment on JA-71. The judgment refers to... That it does not have 841-1B. It has just B-1A. It wouldn't have B-1B, Your Honor, with all due respect. But it would have B-1A. It would have that. That's okay? Absolutely, because that was the governing statute. B-1A governed Mr. Garcia's sentence. Under the Fair Sentencing Act, B-1A determined the statutory range, and that statutory range was at least 10 years and no more than life, up to life. So that is the only statutory reference that the district court could have or should have made, and there is nothing in this record to suggest, and there's no way that this court, with all due respect, should hold that a court without any evidence that the district court erred, that it did err. There's nothing for the district court to find here. We have all the facts in front of us right now. We don't... There's no way for the district court to find one way or the other apart from the evidence that we have, and what we have is this. The timing is critical. If Mr. Garcia had been sentenced in May of 2012, a month before Dorsey issued, I would have agreed that the district court can't simply say, because he was sentenced after the effective date of the act, that he's not eligible under 404C of the First Step Act. I would 100% agree, but when we have a defendant who is sentenced six months after Dorsey and after Muzong, and we do not have any information, we do know that the court applied the Fair Sentencing Act because Mr. Garcia was subject to 10 years to life under that act. We know he applied the act. At least that was the governing law at the time. So I just... There's not going to be, in a case like this, anything in the record that will tell you for sure that the court applied the Fair Sentencing Act unless this court is going to assume that every time a law changes, the judge has to say, oh, the Supreme Court issued a decision six months ago that governs. And so we're going to say, there was no reason for the pre-sentence report to refer to B1B. None whatsoever. Because B1B did not govern Mr. Garcia's sentence. So you maintain that the sentence that he actually received, he could only get under the Fair Sentencing Act? I'm saying that both before and after the Fair Sentencing Act, the statutory range was 10 years to life. So I'll ask again, are you maintaining that the sentence he received could only be gotten under the Fair Sentencing Act? No. He could receive it under the Fair Sentencing Act, and it's the same statutory range that applied before. Which is why the pre-sentence report doesn't refer to it. Why there was no supplement issued. Had the Fair Sentencing Act affected anything about the statutory range to which Mr. Garcia was subject, I can tell you that Judge Voorhees would have ordered and requested a supplemental pre-sentence report. In post-Dorsey, that's exactly what would have happened. Or pre-Dorsey, and then, you know, if it had been sentenced, that's what would happen. But there was no reason for the court to do that after Dorsey in this case because the statutory range did not change. And, you know, again, this is not anything that is in the record, but it is not unusual where a defendant is found, pleaded guilty to a conspiracy offense that involves multiple drugs. Some drugs would trigger B1B. Some drugs would trigger B1A. It is absolutely routine for both the judgment and the pre-sentence report to refer only to B1A. There's no reason to refer to the statutory range that does not apply. Five years to 40 did not apply to Mr. Garcia. So it makes sense that there's nothing in the record that says that he applied the Fair Sentencing Act. There wouldn't be. And what we do know is that Mr. Garcia was sentenced under the statutory range that applied under that act. I don't think that it is – I can't think of another context in which this court would make – yes? Judge Thacker, I'm sorry. Did you have a question? No, I'm sorry. I just coughed. Oh, okay. Sorry. You lit up, and I wasn't sure if I was talking to you. Oh, I lit up. I like that. Well, yeah. Your box. Anyway, it's like a Brady Bunch or something. So all I was going to say is that I think to rule against the district court here means that we have to say that there should be something on the record that tells us that six months after a decision that was not – and by the way, this isn't like a categorical approach decision where, you know, what exactly does it mean? What does Mathis mean? What exactly does it mean under Johnson? No, this was a bright-line Supreme Court rule. If you were sentenced after the effective date of the Fair Sentencing Act, you got its benefits. It was not confusing. It was very straightforward. The judges knew that, and so there wouldn't be anything in the record, I would respectfully suggest, that would indicate that a judge applied a Supreme Court decision that had been in effect for six months. If your honors don't have any further questions, we respectfully request that you affirm the judgment of the district court. So I want to be clear in terms of your presentation that the – in the sentencing under the Fair Sentencing Act, there's nothing from which this court can differentiate that would indicate that a person has been sentenced under that act or any other act. There's nothing – there's no indication. In other words, a court doesn't have to, nor is there any indication, that a person is sentenced under the Fair Sentencing Act, any different than the previous act. Is that what you're saying? Yeah, I'm saying that – let's say, for example, your honor, that – No, I want to know the answer to that question because what I want to know is how – in other words, in any case, it could be the Fair Sentencing Act, it could have been some other act, it could have been anything. Whatever comes up here, there is no way to determine or – nothing the court needs to even indicate that it is sentencing under that particular act. That is your statement, right? I'm right. My statement is this, your honor. Let me ask the next question and then I want you to expound, okay? So if – because what you're telling me, you don't have to have any indication whatsoever of a Fair Sentencing Act. To some extent, you're saying that. If that's so, then how do we ever know there actually are sentencing under the Fair Sentencing Act? The same way that we know, your honor, for example, that when a defendant is sentenced under a RICO offense that the court applied RICO. If the defendant is sentenced under the – In a RICO offense, the pre-sentence report and the court and everybody else probably in the courtroom would have at least mentioned the word RICO. That's how we would have known. It would have in the judgment, yes, and in the pre-sentence report. But this judgment does refer to the Controlled Substances Act, which is what the Fair Sentencing Act amended. So the Controlled Substances Act is B1A and B1B. So it's just the date. It's just because it's after the date of the Fair Sentencing Act. That's how we know that we just assume that courts don't make mistakes. Your honor, we don't assume that six months after the Supreme Court has told a district court that anyone who's sentenced after August 3, 2010, receives the benefit of the Fair Sentencing Act, that the court didn't do that. So, yes, we assume that judges can – That's exactly what they were doing. They weren't doing it in accordance with the way the Supreme Court made a pronouncement of it. So then you're talking about changing a course of action that the court has taken. The court has been doing it wrong. And don't you think that when the Supreme Court tells you to do it right, they would at least indicate something that they are now doing it the right way? I'm not saying there's a presumption either way. I'm saying there's a presumption that you wouldn't have gotten it wrong in the first instance. But it's being done wrong. And now the Supreme Court tells you to do it a different way. And now you'll say, well, that means they're just not doing it wrong no more. They're doing it right. And you don't have to tell us anything. Your honor, if the Fair Sentencing Act had made a whit of difference in this case, it would have been mentioned. If Mr. Garcia's sentencing range was altered at all, then it would have been mentioned. It would have likely been mentioned. Though six months later, maybe, maybe not. But you would have seen, you know, that the original pre-sentence report said B1A, and the next one says B1B. Years later, years later, after the Booker decision that made the guidelines advisory and not mandatory, every PSR and every district court sentencing mentions and acknowledges their awareness that the guidelines are advisory and not mandatory. And that's years after Booker. So we don't assume in other situations. I just don't understand why we would assume here. Except for the fact that you're saying it doesn't matter. The sentence wouldn't have mattered. Right. I mean, let me address your Booker example. It wouldn't have mattered if the judge had said anything about Booker. Booker applied and everyone knew it. But Booker, of course, was, you know, a complete sea change in terms of the process and how a district court assessed what sentence a defendant could get under the guidelines. Very different. But if a district court didn't mention Booker in its pronouncement of sentence, I would respectfully suggest that no one, six months after Booker, would assume that a district court was applying the guidelines in a mandatory fashion. Everyone knew in January of 2005 that the world had changed. I'm not sure every district court knew that. In January, without Judge Thacker, I'd be surprised if there was a district court in the land in January of 2005 that did not know about Booker. U.S. v. Martinovich. Pardon me? U.S. v. Martinovich. There was a district court that was not aware that the sentencing guidelines were no longer mandatory. So thankfully, it's on the record. So we know one way or the other. I hear, Your Honor, I think that it would be, there were questions after Booker about when and how it applied under plain error review and things like that. It was a sea change, and yes, after that, the judges articulated it in a different way. But there are laws that change the way we apply, that decide when a statute is effective and when it's not. I'm sorry, I know your time is almost up, and I just want to give you a chance to just lay out, for me again at least, so I understand why it didn't make a difference. One way or the other. Oh, because, Your Honor, sure. Because he pled guilty and admitted that more than 5 kilograms of powder cocaine were involved in his offense. So under Section 841B1A, 5 kilograms triggers the highest statutory range of 10 years to life. That's the same statutory range that would have applied before the Fair Sentencing Act for an offense involving 50 kilograms or more of crack cocaine. But because he admitted to that high, and I see my time is up, if Judge Wynn, if I may finish answering Judge Baxter. Please, please. So after, thank you, Your Honor. After, once the Fair Sentencing, when he pled guilty to 5 kilograms of powder cocaine, that meant that that higher range was going to apply, because the Fair Sentencing Act did not alter any statutory range as applied to a powder cocaine offense. So it didn't make any difference. There was no reason to get a supplemental. Pardon me? Thank you. Further questions from the judges? Judge Rushin or Judge Thacker, any other questions? No, thank you. Thank you, Ms. Wright. Thank you, Your Honors. We'll now hear from the appellant. You have a little bit of rebuttal time. Just waiting for the clock to run up. May it please the Court, for Mr. Alejandro Salinas-Garcia. As Judge Wynn pointed out, what we're looking to is whether Mr. Garcia is eligible for a first-step act rehearing. And for that, as this Court held in Bravado, it requires the defendant committed a cover offense, and that he was not sentenced in accordance with the Fair Sentencing Act at the original sentencing. Now, the district court said Mr. Garcia was ineligible because it simply said Mr. Garcia was sentenced in 2012, and the Fair Sentencing Act went into effect in 2010, and therefore he must have received the benefit. But as we know in the law, the time is very muddled, and the government concedes that. Well, Ms. Wright says that it would not have made a difference, that he was sentenced in accordance with what he pled guilty to, and the Fair Sentencing Act wouldn't have mattered. Yes, Your Honor. But as we've noticed, the purpose is to be sentenced in accordance with, not necessarily that the sentence may have been lowered, but that merely he be sentenced in accordance with the standards of the Fair Sentencing Act. Likewise, it may have made a difference based on how the sentencing judge viewed it as an anchor point. As this Court recognized in the United States v. Woodson, this changing threshold to the Fair Sentencing Act could affect the anchoring point on which a sentencing judge decides to either depart from the guidelines either to raise or lower it. So, for instance, the sentencing court had seen— Counsel? The attorney for the government pointed out that Mr. Garcia did not admit to or plead guilty to possessing the crack cocaine, but I know it shows up in the judgment. How do we make sense of that? I think your anchor point argument makes me think of that. It was the judge thinking about crack cocaine or not, since Mr. Garcia didn't plead guilty to possessing the crack. Your Honor, I'm not exactly sure how to square away the government's arguments there because we believe that the crack cocaine was very essential to the charge. The charge—the indictment itself listed all three drug amounts, including the crack cocaine. The judgment and sentencing order also reflected the crack cocaine amount, and that's what Mr. Garcia pled guilty to. So, likewise, because the crack cocaine amount is covered by the Fair Sentencing Act, we should have seen it come up in Subpart B and Subpart A, which is not the case. And so we see from the record that there is nothing there to show that Subpart B was considered in either the indictment, the PSR, the guilty plea, or the sentencing order. But meanwhile, Mr. Garcia's co-defendants, who were also likewise charged with the same drug amounts, did have the benefit of Subpart B in some of their judgment and sentencing orders. I'll point to the JAN 64 to show—to see that a co-defendant was sentenced under Subpart A and Subpart B. Then Mr. Garcia, with the amount of crack cocaine that should have been sentenced under Subpart B, was not sentenced under Subpart B. So, contrary to the government's arguments, we actually have evidence that suggests that the Fair Sentencing Act was never considered because the amount of crack that it modified, it was never referenced anywhere in the record. Likewise, the PSR itself was prepared by the government, and it was incumbent on the government and the court to recognize and to enforce the sentencing threshold that Congress passed in the Fair Sentencing Act. So, Mr. Garcia alone shouldn't be in the position of having to prove a negative, basically, to show how he did not receive the benefit of the Fair Sentencing Act. We believe that there's silence in the record, and that silence should not be construed against Mr. Garcia, which is exactly what the 11th Circuit did in the United States v. Joseph. After the district court wrongly decided that Joseph had been sentenced in accordance with the Fair Sentencing Act, again, by merely looking at the dates of sentencing, the appellate court there dove into the record and said, based on the record, we can't tell if he received the benefit. And because of that, we're going to say that Mr. Joseph was not sentenced in accordance with the Fair Sentencing Act. Likewise, here, there's silence in the record that suggests that Mr. Garcia was not sentenced in accordance with the Fair Sentencing Act. Now, whether the standards may have been higher or lower doesn't really matter when we're looking at in terms of eligibility for STEP Act purposes, which merely says that if a defendant committed a covered offense and was not sentenced in accordance with the Fair Sentencing Act, he should now be eligible for a FIRST STEP Act re-hearing, which is exactly what Congress intended to do to rectify longstanding disparities in sentencing amounts. And so, based on the clear intent of Congress, recognized in the U.S. Supreme Court, we ask that this court find that Mr. Garcia is eligible for a FIRST STEP Act re-hearing of the defendant in this court. And if there are no further questions, your Honor, I will close. Judges, anything further? No. All right, I want to recognize that the counsel for the appellate from Washington University, I believe. It's a pleasure to have you at the Fourth Circuit. Professor, it is a pleasure to have you here along with the students. I want to also say I recognize your court opponent, and this court really benefits from the services of lawyers and court opponents. And we thank you for your service, and, as Ray, it's always a pleasure to see you. Thank you all and have a good day.
judges: James Andrew Wynn, Stephanie D. Thacker, Allison J. Rushing